# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSHUA R. HUTCHISON and )
MICHELLE L. HUTCHISON, )
               )
        **Plaintiffs,** )
               )
v. )
               )      **Case No. 16-2277**
UNITED STATES OF AMERICA, )
ROBERT A. MCDONALD, and )
MARK WISNER, P.A. )
               )
        **Defendants.** )
_____ )

## MEMORANDUM AND ORDER

Plaintiffs Joshua and Michelle Hutchison ("J.H." and "M.H.," respectively) bring this case against defendants United States of America, Robert McDonald (Secretary of the Department of Veterans Affairs), and Mark Wisner, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, alleging that Wisner conducted improper and/or unnecessary physical examinations of J.H. and elicited unnecessary private information. This matter is before the court on defendants United States of America and McDonald's Motion to Dismiss. (Doc. 17.) Defendants argue that plaintiffs' Second Amended Complaint should be dismissed for lack of subject matter jurisdiction and because it fails to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons set forth below, the court grants defendants' motion in part and denies it in part. Plaintiffs do not oppose defendants' request to dismiss defendant McDonald (Doc. 25, at 1 n.1) and plaintiffs' claims against him are dismissed.

## I.      Factual Background

J.H. is a veteran who sought treatment at the Dwight D. Eisenhower VA Medical Center ("VA") located in Leavenworth, Kansas.  M.H. is J.H.'s wife.  Wisner treated and provided medical care for J.H.  Wisner was a physician's assistant ("PA") with the VA, but represented himself to the public as a medical doctor.

In Count I, plaintiffs claim that Wisner practiced and prescribed medicine, including the performance of physical examinations, under the close supervision of a VA physician.  Plaintiffs allege that Wisner was negligent when he violated the standard of care by conducting improper and/or unnecessary examinations of J.H.'s genitals and prostate without gloves during appointments.  They claim that Wisner failed to recognize his own impairment and refer J.H. to another practitioner. Plaintiffs further allege that Wisner used his position to elicit unnecessary private information from them and was negligent when he prescribed medication to J.H. that was unnecessary or in improper dosages.  And plaintiffs claim that Wisner's negligent acts occurred during business hours at the VA hospital and were reasonably incidental to his employment—making defendant vicariously liable for his acts.

Plaintiffs state that Wisner admitted to failing to meet the standard of care by making inappropriate sexual comments to his patients, overprescribing medication, and performing unnecessary testicular and genital exams and other unnecessary contact of his patients for no legitimate medical purpose.

Plaintiffs bring claims of negligent supervision, retention, and hiring against defendant in Count II.  Plaintiffs allege that defendant—via the VA—violated its duty to exercise reasonable care when it employed, supervised, and retained Wisner.  They state that defendant knew or should have known that Wisner was unable to provide competent medical care to plaintiffs and that Wisner

victimized and was dangerous to other patients. Plaintiffs also claim that defendant possessed reason to believe that employment of Wisner would result in undue risk of harm to plaintiffs and other patients.

Plaintiffs claim that Wisner was arrested on June 25, 1987, in San Bernardino, California for "Disorderly Conduct: Solicit Lewd Act" and this information was available through the National Crime Information Center. Plaintiffs allege that Wisner was accused of sexual assault in 2012 while employed at the VA. Plaintiffs list other incidents where Wisner was reported for misconduct and misprescription of medications. Plaintiffs allege that defendant knew or should have known that Wisner was unable to provide competent medical care to plaintiff and that he victimized and was dangerous to other VA patients. Plaintiffs also claim that defendant failed to monitor Wisner's clinical activities to ensure that they were within the authorized scope of practice and medically appropriate as required by VHA Directive 1063 and/or the Physician Assistant Licensure Act ("PALA"), K.S.A. § 65-2801, et seq. Plaintiffs allege that VA supervisors failed to perform actions required by VHA Handbook 1100.19; VHA Directive 2012-030, and all preceding regulations; and VHA Directive 2004-029.

Plaintiffs also bring claims for negligent infliction of emotional distress, outrage, battery, and invasion of privacy – intrusion upon seclusion against all defendants. M.H. brings a consortium claim and alleges that as a result of J.H.'s injuries, she has lost the society, conjugal fellowship, love, affection, consortium, and companionship of her husband.[1]

---

[1] Defendant does not separately address the claims of M.H. In a footnote, defendant recognizes that M.H.'s claims are derivative of J.H.'s claims. *See* Kan. Stat. Ann. § 23-605; *Wolfgang v. Mid-American Motorsports, Inc.*, 898 F. Supp. 783, 790 (D. Kan. 1995). As derivative claims, it appears that they should be brought on behalf of M.H. instead of by M.H. Nevertheless, the court will not address this issue now, as the parties have not independently discussed M.H.'s claims.

## II.  Legal Standards

### A.  Rule 12(b)(1)

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate when the court lacks subject matter jurisdiction over a claim.  Plaintiff claims that subject matter jurisdiction exists and has the burden of establishing it.  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).  Because federal courts are courts of limited jurisdiction, there is a strong presumption against federal jurisdiction.  *Sobel v. United States*, 571 F. Supp. 2d 1222, 1226 (D. Kan. 2008).

Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's jurisdictional allegations; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.  *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  For a facial challenge, the court accepts the plaintiff's factual allegations regarding jurisdiction as true.  *Id.* at 1002.  But for a factual attack, the court does not presume that the plaintiff's allegations are true.  *Id.* at 1003.  Rather, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion."  *Id.*

### B.  Rule 12(b)(6)

To the extent this court has subject matter jurisdiction, the court must determine whether plaintiffs' action is subject to dismissal because it fails to state a claim upon which relief could be granted.  The court grants a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations need not be detailed, the

claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible—not merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III.    Discussion

Under the FTCA, the United States has waived its sovereign immunity for injuries caused by the "negligent or wrongful act or omission" of a federal government employee while that employee is "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). An action under the FTCA is the exclusive remedy for a plaintiff claiming personal injuries arising out of the negligent conduct of a federal employee, 28 U.S.C. § 2679(b)(1), and federal courts have exclusive jurisdiction over such actions, 28 U.S.C. § 1346(b)(1).

### A.    Count I

#### 1.    *Scope of Employment*

Defendant characterizes Wisner's conduct as "sexual misconduct." Applying this characterization, defendant argues that the court lacks jurisdiction because Wisner's conduct was not within the scope of his employment. Sexual battery and/or inappropriate touching and sexual comments are not within the duties that a PA is hired to perform, defendant argues, and did not further the VA's business.

Under the FTCA, the United States is liable only for tortious acts committed by employees "acting within the scope of [their] office or employment."  28 U.S.C. § 1346(b)(1).  "Scope of employment" is determined by the law of the place where the accident occurred.  *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011); *see also* 28 U.S.C. § 1346(b)(1).  In Kansas, an employee acts within the scope of his employment when (1) he performs services for which he has been employed, or (2) he does anything reasonably incidental to his employment.  *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (citing Pattern Instructions Kansas 3d 107.06; *Williams v. Cmty. Drive-In Theater, Inc.*, 520 P.2d 1296, 1301–02 (Kan. 1974)).  The test is not whether the employer expressly authorized or forbid the conduct.  *Id.*  Instead, the court asks whether the employer should have fairly foreseen the conduct from the nature of the employment and the duties relating to it.  *Id.*; *see also Commerce Bank of St. Joseph, N.A. v. State*, 833 P.2d 996, 999 (Kan. 1992).

Plaintiffs claim that scope of employment is a factual determination.  Generally, this is correct, but the court may resolve this question as a matter of law when only one reasonable conclusion can be drawn from the evidence.  *See Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 646 (Kan. Ct. App. 2011) (citing *O'Shea*, 350 F.3d 1101).

### a.    Slight Deviation Analysis

Plaintiffs claim that Wisner's conduct was within the scope of his employment because it was a "slight deviation" from his duties.  In *O'Shea v. Welch*, the Tenth Circuit reviewed the Kansas jury instruction on scope of employment, and determined that it is compatible with the slight deviation analysis.  *O'Shea*, 350 F.3d at 1106.  "Application of the slight deviation analysis allows for more flexibility and accuracy in the application of the law to each fact scenario.  The Kansas pattern jury instruction[] . . . does not express a bright-line rule but instead illustrates a type of slight deviation rule

which requires a determination of what is reasonably incidental to employment and what conduct should have been fairly foreseen." *Id.*

Under the slight deviation analysis, an employee could pursue dual purpose ventures without the conduct amounting to an entire departure from the scope of employment. *Id.* at 1107. "An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed." *Id.*

The court reviews the following factors to determine whether an employee has engaged in a slight or substantial deviation: (1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities. *Id.* at 1108 (citing *Felix v. Asai*, 192 Cal. App. 3d 926, 237 Cal. Rptr. 718, 722 (1987)).

### b. Wisner's Conduct

Plaintiffs claim that Wisner's tortious conduct was not far removed in time, distance, or purpose from his normal duties and thus, incidental to his employment at the VA. J.H. alleges that he saw Wisner 4 to 5 times per week between 2010 and 2011, and continued to see Wisner for treatment until sometime in 2014. During his appointments, plaintiffs allege that Wisner would lock the door, ask J.H. about sex, and perform physical examinations without gloves. J.H. states that he never saw Wisner wash his hands. During these examinations, J.H. claims that Wisner placed one hand on his inner thigh and used the other hand to massage J.H.'s testicles and penis. According to plaintiffs,

Wisner sometimes claimed that he was checking for "discoloration" and make statements like "things are looking good down there." At one appointment, Wisner performed a "breast exam" on J.H., which he concluded by jokingly flicking J.H.'s nipple. Plaintiffs further allege that Wisner asked inappropriate questions about J.H.'s sex life, including whether M.H. was satisfied with his sexual abilities, pubic hair trimming, how long he could "keep it up," if he could "finish," and the frequency he had sex.

Plaintiffs reference several of Wisner's admissions in his complaint. Wisner admitted to making inappropriate sexual comments to his patients. Wisner also admitted that he performed unnecessary testicular and genital examinations and unnecessary contact of his patients for no legitimate medical purpose.

Plaintiffs argue that while Wisner's acts were improper, they were still in line with his duties he was hired to perform as a PA. At this stage, plaintiffs have presented a plausible negligence claim that is supported by facts consistent with the allegations in the complaint. Arguably, Wisner was furthering the VA's interests in treating and examining J.H., even though it may have been done in excess and included inappropriate comments. Some of Wisner's duties included prescribing medication and performing physical examinations on patients. There is no dispute that misprescription of medication and performing improper or excessive examinations without gloves—to the extent that Wisner gained personal satisfaction from these examinations—was a deviation from his duties. But it is plausible that this deviation was not an entire departure from the scope of Wisner's employment and was within the parameters of the duties he was hired to perform. At this time, the court cannot resolve this question as a matter of law. Any improper examinations occurred during appointments when J.H. sought medical treatment from the VA. And plaintiffs do not allege that examinations occurred after business hours or outside of the VA's building.

Moreover, full physical examinations (including examination of the VA patients' genitalia and prostates) are not necessarily unexpected. The failure to wear gloves and/or an excessive number of examinations might be improper, but this conduct in general is not unforeseeable or unexpected of a PA hired to treat VA patents. Likewise, obtaining personal information from a patient for diagnosis and treatment is expected and often necessary for effective treatment. While Wisner's conduct may have been unprofessional or forbidden, that is not the test. *See O'Shea*, 350 F.3d at 1103.

      <u>c.</u>     <u>VA Immunity Statute for Intentional Torts</u>

Defendant argues that 28 U.S.C. § 2680(h) bars plaintiffs' claims because the FTCA does not apply to claims arising out of a battery. The FTCA exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Under the FTCA's general provisions, the United States remains immune for claims arising out of these enumerated intentional torts. *See id.*

Another exception may apply in the instant case, however: the VA Immunity Statute. This law allows for a remedy against the United States under the FTCA for damages arising from the provision of medical services by health care employees of the VA under 38 U.S.C. § 7316(a)(1), (f). *Ingram v. Faruque*, 728 F.3d 1239, 1245–46 (10th Cir. 2013) (citation omitted) ("'[Section] 2680(h) does not bar application of the FTCA to [intentional] tort claims arising out of the conduct of VA medical personnel within the scope of' 38 U.S.C. § 7316(f)."). Defendant argues again that this exception does not apply because (1) Wisner was not acting within the scope of his employment when he sexually battered J.H.; (2) Wisner's unnecessary or improper touching was not related or incidental to J.H.'s medical treatment; and (3) plaintiffs characterized the conduct as intentional and sexually charged.

For the reasons previously set forth, defendant's arguments fail at this stage of the litigation. Plaintiffs have presented a plausible claim that the VA Immunity Statute applies.

## B. Count II

The court resolves questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place. *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993). Kansas recognizes that negligent hiring and retention or supervision are separate and distinct torts from respondeat superior. *Miller v. Dillard's Inc.*, 47 F. Supp. 2d 1294, 1299 (D. Kan. 1999) (citing *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1223 (Kan. 1998)). Liability for negligent hiring, retention, and/or supervision is not predicated on a theory of vicarious liability, but instead, liability runs directly from the employer to the person injured. *Beam v. Concord Hosp., Inc.*, 873 F. Supp. 491, 503 (D. Kan. 1994).

"Negligent supervision includes not only the duty to supervise but also includes the duty to control persons with whom the defendant has a special relationship including the defendant's employees or persons with dangerous propensities." *Marquis*, 961 P.2d at 1223. To subject an employer to liability on a negligent supervision claim,

> plaintiff must show "some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of [its] employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity . . . ."

*Kan. State Bank & Trust Co. v. Specialized Transp., Servs., Inc.*, 819 P.2d 587, 596 (Kan. 1991) (quoting *Hollinger v. Stormont Hosp. & Training Sch. for Nurses*, 578 P.2d 1121 (Kan. Ct. App. 1978)).

Kansas recognizes a cause of action for negligent hiring, which is separate and distinct from the tort of negligent supervision. *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1245 (D. Kan. 2003).

"The employer is negligent in hiring or retaining such an employee when the employer knew or should have known of the employee's incompetence or unfitness." *Id.* (quoting *Prague v. Monley*, 28 P.3d 1046, 1049 (Kan. Ct. App. 2001)).

Plaintiffs allege that the VA knew or should have known that Wisner was dangerous and further that he had a propensity to commit inappropriate acts against plaintiffs and other VA patients. Wisner was an employee of the VA and the VA was responsible for supervising him. Defendant, however, argues that the discretionary function exception applies to bar the court's jurisdiction over plaintiffs' negligent supervision and hiring and retention claims.

### 1. Law: The Discretionary Function Exception

The discretionary function exception limits the FTCA's waiver of sovereign immunity when the governmental conduct at issue involves an element of judgment or choice. *See* 28 U.S.C. § 2680(a); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Franklin Sav. Corp.*, 180 F.3d at 1130 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the employee has no rightful option but to adhere to the directive, then sovereign immunity is waived and the court has jurisdiction to consider the case. *Id.*

If a jurisdictional question is intertwined with the merits of the case, the court converts a Rule 12(b)(1) motion to one under Rule 12(b)(6) or Rule 56. *See Franklin Sav. Corp.*, 180 F.3d at 1129–30. Whether the discretionary function exception applies is such a question. *Id.*

To avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that place their FTCA claim facially outside the discretionary function exception. *Id.* at 1130. The court performs a two-pronged analysis in determining whether defendant's conduct falls within the exception. *Id.* First, the court

decides whether the governmental conduct "is a matter of choice for the acting employee," because without an element of judgment or choice, conduct cannot be discretionary. *Id.* Specifically, the court considers if there is a federal statute, regulation, or policy "sufficiently specific [and mandatory] to remove decision[-]making under [it] from the discretionary function exception." *Elder v. United States*, 312 F.3d 1172, 1177 (10th Cir. 2002); *see also Franklin Sav. Corp.*, 180 F.3d at 1131. Second, if the conduct does involve judgment or choice, the court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Franklin Sav. Corp.*, 180 F.3d at 1130. Congress's intent in maintaining governmental immunity for discretionary functions was to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (quoting *Berkovitz*, 486 U.S. at 536–37).

### 2. *Application: The Discretionary Function Exception*

Plaintiffs allege that VA supervisors failed to monitor Wisner's clinical activities to ensure that they were within his authorized scope of practice and medically appropriate under both VHA Directives 1063; 2004-029; 2012-030; and/or PALA, Kan. Stat. Ann. § 65-28a01. They also claim that the VA failed to adequately supervise and control Wisner, given his known propensities toward harming VA patients. Plaintiffs further allege that the VA failed to perform the credentialing requirements applicable to PAs under VHA Handbook 1100.19.

To overcome the discretionary function exception, the plaintiff must show that the federal employee's discretion was limited by a *federal* statute, regulation, or policy. *Sydnes v. United States*, 523 F.3d 1179, 1184 (10th Cir. 2008) (emphasis added). The court will not consider the state of Kansas PALA.

<u>a.</u>    <u>Negligent Supervision</u>

<u>i.</u>    VHA Directive 1063

VHA Directive 1063 mandates specific supervisory actions by Wisner's supervising physician. At a minimum, VHA Directive 1063 required Wisner's supervising physician to be in weekly contact to discuss clinical management issues and review five randomly selected patient encounter notes each quarter. Plaintiffs allege that this was not done.

VHA Directive 1063 was issued on December 24, 2013. Plaintiffs claim that Wisner committed wrongful acts at J.H.'s 2010 and 2011 appointments. Plaintiffs allege that J.H. saw Wisner until sometime in 2014. To the extent that plaintiffs' claims occurred prior to December 24, 2013, VHA Directive 1063 was not the governing policy.

<u>ii.</u>    VHA Directive 2004-029

Plaintiffs also claim that VA supervisors failed to abide by VHA Directive 2004-029. Although VHA Directive 2004-029 indicates that it expired on July 31, 2009, VHA Directive 1063 rescinded the 2004 version in December 2013. VHA Directive 2004-029 was the federal policy that the VA was required to follow prior to December 24, 2013.

VHA Directive 2004-029 required that a supervising physician conduct a structured review of the assigned PA's performance every two years at the time of the renewal of the PA's scope of practice. Structured reviews and renewal of an uncertified PA's scope of practice were required to be conducted annually. The review had to include:

(1) Overall assessment.

(2) Results of departmental/service monitoring and evaluation, drug utilization review, blood use evaluation, medical record review, or surgical case review or any other objective quality improvement data available.

(3) The PA's scope of practice.

The PA's assigned chief of clinical service was required to monitor the review process and concur.

Plaintiffs allege that the VA failed to comply with the review requirements mandated by VHA Directive 2004-029. At this stage of the litigation, plaintiffs have sufficiently placed their negligent supervision claim outside the discretionary function exception. The court retains jurisdiction over plaintiffs' negligent supervision claim.

### b. Negligent Hiring and Retention

Plaintiffs also allege that defendant failed to adequately investigate Wisner's background and was negligent in hiring and retaining Wisner as a PA. Specifically, plaintiffs allege that the VA failed to perform specific actions required by VHA Handbook 1100.19 and VHA Directive 2012-030, which apply to the "credentialing" of health care professionals, including PAs.[2] Both polices outline certain actions to be taken as part of the credentialing process, which is defined as "the systematic process of screening and evaluating qualifications and other credentials . . . ." *See* VHA Handbook 1100.19 §§ 1, 2(d). For example, "[p]roper screening through the [National Practitioner Data Bank-Health Integrity and Protection Data Bank ("NPDB-HIPDP")] is required for applicants" and the information received should be "considered together with other relevant data in evaluating a practitioner's credentials." *Id.* § 13(l)(1). If the screening "shows adverse action or malpractice reports, an evaluation of the circumstances and documentation" is required and must follow certain guidelines outlined in the handbook. *Id.* § 13(l)(6). The provisions in VHA Handbook 1100.19 and VHA Directive 2012-30 identified by plaintiffs, however, do not mandate a specific hiring or employment retention decision. The policies require VA personnel to complete certain specific and mandatory actions, but ultimately

---

[2] The VHA Handbook 1100.19 and VHA Directive 2012-30 also apply to the "privileging" of health care professionals (clinical privileging is "the process by which a practitioner, licensed for independent practice . . . , is permitted by law and the facility to practice independently . . . ."). VHA Handbook 1100.19 § 2(e). However, only the credentialing requirements apply to PAs. *Id.* § 3(a).

leave the hiring or employment retention decisions to the discretion of VA personnel based on their review and evaluation of the information collected during the credentialing process.

VHA Directive 2012-30 and VHA Handbook 1100.19 were issued on October 11 and 15, 2012, respectively. In plaintiffs' complaint, they allege that in 2011, a VA patient reported Wisner's inappropriate conduct to a VA Medical Center case manager. Wisner was employed by the VA prior to these policies' enactments; thus, the requirements contained within were not mandated on the VA at the time it hired Wisner. Although plaintiffs allege that defendant violated VHA Directive 2012-30 and all preceding regulations, plaintiffs do not provide the court with a specific federal policy applicable at the time the VA hired Wisner, and therefore have failed to meet their burden to overcome the discretionary function exception. *See Sydnes*, 523 F.3d at 1184.

On the other hand, both VHA Directive 2012-30 and VHA Handbook 1100.19 require credentialing and verification with respect to reappointment of a PA—both of which relate to the VA's retention of Wisner after October 2012.

Although neither party has briefed the issue, there is divided circuit precedent as to whether plaintiffs can "avoid the discretionary-function bar by alleging that" defendant breached certain specific duties, even though the ultimate decisions "were themselves discretionary." *See Franklin Sav. Corp.*, 180 F.3d at 1132 n.11 (citing divided precedent from other circuits on this issue generally, under which some courts barred such claims absolutely, while other courts barred the claim, but foresaw exceptions, and one court allowed such a claim); *see also Johnson v. United States*, 949 F.2d 332, 339–40 (10th Cir. 1991) (rejecting plaintiff's argument that certain allegedly non-discretionary tasks of gathering and communicating information about an accident should be separated from the discretionary decision by the National Park Service of how to conduct the rescue of an injured mountain climber, as the former tasks were "inextricably tied" to the latter discretionary decision,

leaving "[n]o meaningful way . . . to consider the nature of [the former non-discretionary] acts apart from the total rescue decision"). In *Franklin Savings Corp.*, the Tenth Circuit acknowledged the issue, but expressed no opinion on the legal viability of such a claim because the plaintiffs' "complaint did not attribute any harm to the breach of a specific mandate to draft memoranda, as opposed to a failure to perform the discretionary function of weighing options." *Id.* at 1132 n.11, 1133. Here, plaintiffs allege that had defendant followed the

> specific, non-discretionary requirements [in VHA Handbook 1100.19 and VHA Directive 2012-30], [it] would have discovered Wisner's sex-related criminal conviction. As a result, the VA . . . negligently retained [Wisner] each time it failed to properly evaluate him prior to reappointments.

(Doc. 25, at 25 (citation omitted).)

The court finds the analysis in *Johnson* persuasive. While the VA policies mandate an investigation, documentation, and review of the circumstances, the VA still retains discretion to (1) continue employment with no change; (2) restrict clinical privileges; or (3) deny reappointment and/or terminate. *See, e.g.*, VHA Handbook 1100.19 §§ 13k(4), m(4)(e), and r. Although plaintiffs' retention claim is tied to specific, non-discretionary requirements of evaluating the circumstances, the VA's ultimate decision with respect to retaining or terminating Wisner was discretionary.

Even though plaintiffs fail under *Berkovitz's* first prong, they may still overcome the discretionary function exception by demonstrating that the nature of the actions taken does not implicate public policy concerns, or is not susceptible to policy analysis. *See Sydnes*, 523 F.3d at 1185. With respect to the second prong of *Berkovitz*, the court considers whether the judgment exercised by the government official is of the kind that the discretionary function exception was designed to shield. 486 U.S at 536. Decisions regarding employment and termination are precisely the types of administrative actions the discretionary function exception seeks to shield. *Sydnes*, 523 F.3d at 1185–86 ("[E]mployment and termination decisions are, as a class, the kind of matters requiring

consideration of a wide range of policy factors, including 'budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience, and employer intuition.'") (citation omitted).

The court is mindful that plaintiffs' retention issue is a close call, but the case law is clear: the court applies an objective test. *See Franklin Sav. Corp.*, 180 F.3d at 1141 ("The inquiry necessary to decide whether this case involved 'negligent, good-faith conservation' or 'intentional, bad-faith liquidation' would entail the type of judicial second-guessing which led the *Gaubert* Court to hold that courts need not consider officials' actual decisionmaking in FTCA cases.") (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). The purpose of the discretionary function exception to the wavier of sovereign immunity is to dismiss a FTCA claim at the earliest possible stage of the litigation and spare the government from discovery and trial expense. *See generally Franklin Sav. Corp.*, 180 F.3d at 1138 (comparing FTCA claims to qualified immunity claims). Under the guidance of *Berkovitz* and *Franklin Sav. Corp.*, the discretionary function exception to the waiver of sovereign immunity applies to plaintiffs' negligent hiring and retention claim presented in Count II. The court lacks jurisdiction over this portion of Count II.

## C.     Count III

Plaintiffs bring claims of negligent infliction of emotional distress against defendant. Plaintiffs allege that Wisner's examination of J.H. and offensive inquiries into their sex lives was committed with reckless disregard for plaintiffs. They also alleges that Wisner's conduct was extreme and outrageous as well as the direct and proximate cause of plaintiffs' foreseeable mental distress. Plaintiffs' injuries include: past, present, and future shame, humiliation, medically significant emotional distress, and anger. M.H. claims additional injuries in her consortium claim. Plaintiffs

allege that their mental distress was extreme, severe, medically diagnosable, and significant such that no reasonable person should be expected to endure it.

Defendant claims that plaintiffs have failed to show a qualifying physical injury to support a claim for negligent infliction of emotional distress under Kansas law.

"In Kansas, the elements of a claim for negligent infliction of emotional distress include a qualifying physical injury." *Majors v. Hillebrand*, 349 P.3d 1283, 1285 (Kan. Ct. App. 2015). However, the "physical injury rule is inapplicable where the injurious conduct is willful or wanton, or the defendant acts with intent to injure." *Id.* (citing *Hoard v. Shawnee Mission Med. Center*, 662 P.2d 1214, 1219–20 (Kan. 1983)).

Plaintiffs acknowledge that they must show a qualifying physical injury, but respond that they pleaded that Wisner's conduct was willful and wanton—specifically, Wisner acted with reckless disregard for plaintiffs. If plaintiffs' theory is to be accepted, it is not clear how the negligence claim would be anything but a reiteration of plaintiffs' outrage claim, which asserts liability on the basis of Wisner's reckless disregard of plaintiffs' well-being.

Generally, negligence has no application to willful or wanton wrongs. *Anspach v. Tomkins Indus., Inc.*, 817 F. Supp. 1499, 1509 (D. Kan. 1993) (citing *Bowman v. Doherty*, 686 P.2d 112, 114 (Kan. 1984). "Wanton conduct is distinguished from a mere lack of due care by the fact that the actor realized the imminence of injury to others from his acts and refrained from taking steps to prevent the injury. This reckless disregard or complete indifference rises substantially beyond mere negligence." *Bowman*, 686 P.2d at 118.

Plaintiffs do not take the position that defendant is liable for simple negligent infliction of emotional distress (arising out of conduct that was not wanton). To the extent plaintiffs' negligence claims are not based upon Wisner's intentional or wanton conduct, in the absence of contemporaneous

resultant physical injury, their negligent infliction of emotional distress claim cannot stand. *See Patton v. Entercom Kansas City, L.L.C.*, No. 13-2186-DDC-JPO, 2014 WL 2557908, at *10–12 (D. Kan. June 6, 2014) (rejecting plaintiff's negligent supervision claim where plaintiff alleged she felt upset, shaken, embarrassed, humiliated, and insulted, and that she experienced sleeplessness, anxiety, shortness of breath, and feeling more emotional and irritable) (citing *Schweizer-Reschke v. Avent, Inc.*, 874 F. Supp. 1187, 1196–97 (D. Kan. 1995) (rejecting plaintiff's claim for negligent infliction of emotional distress where plaintiff alleged she suffered vomiting, diarrhea, anxiety, shortness of breath, rapid heartbeat, and tightness of breath). The court therefore dismisses Count III.

### D.    Count IV

In Kansas, the court determines two threshold requirements for the tort of outrage: "(1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it." *Smith v. Welch*, 967 P.2d 727, 733 (Kan. 1998). Plaintiffs must show: (1) Wisner's conduct was intentional or in reckless disregard of plaintiffs; (2) the conduct was extreme and outrageous; (3) there was a causal connection between Wisner's conduct and plaintiffs' mental distress; and (4) plaintiffs' mental distress was extreme and severe. *Id.*

Defendant argues that plaintiffs' claims are standard boilerplate allegations and also that plaintiff' never claimed their mental distress was severe enough to require counseling or medication. But plaintiffs allege that Wisner acted in reckless disregard of plaintiffs' well-beings, resulting in medically significant, extreme, and severe emotional distress. In their invasion of privacy claim, plaintiffs state that as a result of Wisner's conduct, they suffered long-lasting, medically significant emotional distress that required medical treatment. Plaintiffs also claim that Wisner's conduct was

"extreme and outrageous by any reasonable standard . . . in any community of America, and goes beyond the bounds of decency[,] so as to be regarded as utterly atrocious and intolerable in civilized society." (Doc. 16, at 21.) It is plausible from the pleadings that plaintiffs obtained medical treatment for the emotional distress they suffered as a result of Wisner's reckless conduct. At this stage, the court assumes that the pleadings are true and makes all inference in favor of plaintiffs. Plaintiffs' claim of outrage is plausible.

### E.     Count V

Under Kansas law, a medical examination of the body of a person is a technical invasion of privacy, battery, or trespass, regardless of its result, unless the person or some authorized person consents to it. *Smith*, 967 P.2d at 732. "Ordinarily, as applied to a surgical operation, the distinction 'between an unauthorized operation amounting to assault and battery on the one hand, and negligence such as would constitute malpractice on the other, is that the former is intentional while the latter is unintentional.'" *Id.* (quoting *Hershey v. Peake*, 223 P. 1113, 1114 (Kan. 1924)). In Kansas, assault, battery, and sexual battery are intentional civil injuries and are also separate and distinct statutory crimes. *Id.*

J.H. sufficiently alleges that Wisner performed a technical invasion of privacy, or a battery, when he conducted an improper and unnecessary examination that was beyond the scope of any legitimate medical purpose. J.H. did not knowingly consent to such an examination.

As addressed above, J.H. presents a plausible claim that Wisner was acting within the scope of his employment during J.H.'s appointments, and the court has jurisdiction over his battery claim.

### F.     Count VI

Kansas recognizes an invasion of privacy claim based upon a defendant's intrusion upon seclusion. *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1236–37 (D. Kan. 2003) (citing *Moore v.*

*R.Z. Sims Chevrolet-Subaru, Inc.*, 738 P.2d 852, 856 (Kan. 1987))  "[A] plaintiff must establish the existence of two conditions: 'First, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and second, that the intrusion would be highly offensive to a reasonable person.'" *Id.* at 1237 (quoting *Moore*, 738 P.2d at 857.  To be liable, the defendant must place himself physically, or by means of his senses, within plaintiff's zone of privacy. *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1382 (D. Kan. 1996). "Consequently, it is both the manner of intrusion as well as the nature of the information acquired that must rise to the level of being highly offensive to a reasonable person." *Id.*

J.H. claims that Wisner intentionally interfered with his seclusion when he "pried into his personal affairs and concerns by asking him about his personal life, sexual activities[,] and genitalia during [the] examination."  (Doc. 16, at 22.)  J.H. argues that Wisner's conduct was intrusive such that a reasonable person would be offended; but J.H. also maintains that Wisner's offensive inquiries served the VA's interest because the questioning could have obtained medically relevant information.

J.H.'s position on his claim of invasion of privacy is inconsistent with his allegations that Wisner was acting within the scope of his employment.  As previously stated, it is reasonable to expect that an appointment with a PA might include questions about the patient's personal life and a full physical examination.  J.H. is correct in that a VA patient would have a heightened interest in privacy concerning his medical treatment and sexual information; however, the fact that Wisner asked J.H. about his sex life is not unreasonable.  J.H. does not allege that Wisner publicized J.H.'s personal information.  If Wisner's inquiries were offensive and unreasonable, then he would not have been acting within the scope of his employment—a position that J.H. opposes.  *See generally O'Shea*, 350 F.3d at 1107 (a slight deviation does not amount to turning aside completely from the employer's

business, so as to be inconsistent with its pursuit, and is often reasonably expected). The court finds that J.H.'s invasion of privacy claim is not plausible.

### G. Statute of Limitations

Plaintiffs' claims stem from medical treatment he received from 2010 to 2014. J.H. filed his administrative claim on August 11, 2015. M.H. filed hers on September 18, 2015. Both claims referenced J.H.'s appointments with Wisner. Defendant argues that plaintiffs' claims occurring before August 11, 2013, are time-barred.

The FTCA provides that a tort claim against the United States "shall be forever barred" unless it is presented to the "appropriate Federal agency within two years after such claim accrues" and then brought to federal court "within six months" after the agency acts on the claim. 28 U.S.C. § 2401(b); *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1629 (2015). In *Kwai Fun Wong*, the United States Supreme Court resolved a split among the circuits and held that the time limitations contained in § 2401(b) are not jurisdictional. *Id.* at 1632–33. "The time limits in the FTCA are just time limits, nothing more." *Id.* at 1633. Taking into account *Kwai Fun Wong's* holding, other district courts have determined that the plaintiff's failure to comply with the FTCA's statute of limitations is an affirmative defense, which the defendant has the burden of establishing. *See, e.g.*, *Saofaigaalii v. United States*, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *6 (D. Haw. June 23, 2016); *Crowder v. Hansen*, No. 15-CV-3216 (MJD/HB), 2016 WL 4870621, at *7 (D. Minn. July 29, 2016). Because the issue is being presented on a motion to dismiss under Rules 12(b)(1) and (6), the defense must appear on the face of the complaint. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses. In the limited circumstances where the

allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint.").

"The general accrual rule for FTCA claims is the "injury-occurrence rule," where the tort claim accrues on the date of injury." *Bayless v. United States*, 767 F.3d 958, 964 (10th Cir. 2014). The "discovery rule" is an exception and applies to "'protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or otherwise not evident.'" *Id.* (quoting *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999)). In cases applying the discovery rule, the date of accrual is when a reasonably diligent plaintiff knows or should have known of both the existence of and cause of the injury. *Id.*

Plaintiffs claim that they were unaware of Wisner's misconduct or his emotional injury until late 2014, when the VA contacted "Wisner victims." (Doc. 25, at 35.) According to plaintiffs, the emotional injury occurred when they had knowledge that Wisner's intent may have been to exploit J.H. as well as treat him.

At this stage, the court finds that defendant has not met its burden. Defendant fails to show how plaintiffs were aware of their emotional injury prior to the VA releasing information that indicated that Wisner's physical examinations were improper. The court does not find as a matter of law that the discovery rule is inapplicable to save plaintiffs' claims from the two-year statute of limitations under § 2401(b).

## IV.     Conclusion

The court has jurisdiction to review plaintiffs' claims for negligence, battery, and outrage against defendant under vicarious liability. Plaintiffs have adequately alleged that Wisner was acting within the scope of his employment and plaintiffs' claims are plausible. But the court finds that

plaintiffs' claims for negligent infliction of emotional distress and invasion of privacy are not plausible under Kansas law. The court also has jurisdiction to review plaintiffs' negligent supervision claim against defendant. However, the discretionary function exception precludes the court's jurisdiction to review plaintiffs' negligent hiring and retention claim.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. 17) is denied as to Counts I, IV, and V.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss is granted as to plaintiffs' negligent hiring and retention claim, but the court retains jurisdiction over plaintiffs' negligent supervision claim against defendant in Count II. Defendant's motion to dismiss is also granted as to Counts III and VI.

**IT IS FURTHER ORDERED** that defendant Robert McDonald is dismissed as a defendant in this case.

Dated this <u>23rd</u> day of May, 2017, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**